## UNITED STATES of America

### v.

### Ian Moses ASHLEY, Defendant.

### Crim. No. 91–093–01 SS.

United States District Court, District of Columbia.

April 12, 1991.

Randall Eliason, Asst. U.S. Atty., Washington, D.C., for the Government.

W. Gregory Spencer, Asst. Federal Public Defender, Washington, D.C., for defendant.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This case is before the Court on defendant Ian Ashley's motion to suppress tangible evidence. On January 29, 1991, a Metropolitan Police Officer searched Mr. Ashley and recovered approximately 77.4 grams of crack cocaine from his person. Mr. Ashley seeks to bar introduction of this evidence at trial.

The Court held an evidentiary hearing on April 8, 1991. Because the searching officer acted within his authority in confiscating the drugs, defendant's motion will be denied.

### The Facts

On the evening of January 29, 1991, Mr. Ashley arrived in Washington, D.C. aboard a Greyhound bus. He exited the bus at the Greyhound Bus Terminal on First Street, N.E., at approximately 6:30 p.m. He then walked through the station and out on to the street.

At this point, according to the testimony of Detective Ronnie Hairston, Detective Hairston approached Mr. Ashley, identified himself as a police officer, and explained that his job was to interdict the flow of drugs into Washington. Detective Hairston further testified that he asked Mr. Ashley for permission to search him, and that Mr. Ashley gave his permission by answering "yes" and by raising his arms. Detective Hairston's search included reaching into Mr. Ashley's underwear, where the detective found a bag containing the crack cocaine. Detective Hairston then called over another officer, and the two officers took Mr. Ashley into custody.

Mr. Ashley testified at the evidentiary hearing. His testimony contradicted the account of the facts given by Detective Hairston. According to Mr. Ashley, Detective Hairston approached Mr. Ashley as he left the bus station, identified himself as a police officer, and grabbed Mr. Ashley by the arm. Mr. Ashley testified that he protested, but that another police officer held Mr. Ashley from behind while Detective Hairston searched him.

### Discussion

If Detective Hairston's version of this incident is accurate, the search was a constitutionally proper voluntary search under the Court of Appeals' decision in *United States v. Lewis,* 921 F.2d 1294 (D.C.Cir. 1990). I credit Detective Hairston's testimony.

Mr. Ashley was not a credible witness. He gave a false name and a false address to the police officers who arrested him. His counsel argued to the Court that Detective Hairston's testimony was incredible because Mr. Ashley would not have consented to a search knowing that he had contraband on his person. According to the testimony of both Mr. Ashley and Detective Hairston, however, Mr. Ashley was wearing two pairs of pants, in addition to his underwear, at time of the encounter. To find the drugs, Detective Hairston loosened both pairs of pants and then reached into Mr. Ashley's underwear. Believing the drugs he was carrying to be well concealed, it is plausible that Mr. Ashley consented to what he assumed would probably be a superficial search. Of course he was surprised when the police officer conducted a thorough search.

While under the law and the facts as the Court has found them Mr. Ashley's motion must be denied, I am nonetheless troubled by these consensual search cases where individuals stopped without cause are asked to waive their Fourth Amendment rights. In virtually every train and bus stop interdiction case, this Court is presented with a motion to suppress evidence in which the government claims that the evidence was recovered pursuant to the defendant's knowing consent. Invariably, the evidence of voluntariness comes down to a swearing match between a police officer and the defendant. The sanctity of Fourth Amendment rights ought not to depend solely upon the relative credibility of two witnesses—particularly because, where a police officer's testimony is pitted against that of a defendant from whom contraband has concededly been recovered, the police officer's statement is almost always found to be the more credible evidence.

The interdiction program involved in this case consists of the stopping at random of passengers exiting from incoming buses and trains for the purpose of requesting them to consent to be searched. Under the law of this Circuit, as long as consent is deemed to be freely given, the requirements of the Fourth Amendment are met. But, considering the widespread nature of this police practice, and the magnitude of the constitutional rights at stake, it is essential for courts to satisfy themselves that the searches are in fact consensual. Ensuring a finding of voluntariness is difficult when the encounter between police and citizen is not shown in any way other than by the conflicting accounts of the participants.

Because such an important constitutional right is at issue, and because interdiction efforts are being conducted on virtually a 24–hour basis and affect the free movement of so many of our young, typically underclass citizens, perhaps the time has come for the police to put in place a program for corroboration of an officer's oral testimony. Such a program could take the form of a video or audio tape of the incident, or even simply the obtaining of a signed consent card. Corroboration is of course not possible in every instance of a consent search. But when police officers set out on interdiction sweeps, fully intending to stop citizens without any suspicion they have done anything wrong and ask them for consent to search their persons, planning for appropriately corroborating the individual's consent would provide citizens' Fourth Amendment rights the dignity they deserve.

Conflicts between witnesses are inevitable. In many instances, it is difficult to avoid having a defendant's liberty hang upon the Court's determination of credibility. The problems come when the police deliberately and systematically set in place procedures that affect valuable constitutional protections, and when the only check on these procedures—the judiciary—must rely on scant, uncorroborated, and contradicted testimony.

These concerns notwithstanding, it is the finding of the Court that Detective Hairston obtained Mr. Ashley's consent before the search now being challenged. Because the search was consensual, the evidence recovered will be admissible at trial.

An appropriate order accompanies this opinion.

## ORDER

Upon consideration of defendant's motion to suppress evidence, the government's opposition thereto, the evidence introduced at a hearing held before this Court on April 8, 1991, the arguments of counsel, and the entire record in this case, it is this 12th day of April 1991 hereby

ORDERED that defendant's motion to suppress tangible evidence is DENIED.